UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL REED,                                  :

               Petitioner,                 :        10 Civ. 3072 (PGG) (AJP)

          -against-                       :        **REPORT AND RECOMMENDATION**

WILLIAM D. BROWN, Superintendent,              :
Eastern Correctional Facility,
                              :

               Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Paul G. Gardephe, United States District Judge:**

        Pro se petitioner Michael Reed seeks a writ of habeas corpus from his October 2, 2006 conviction following a guilty plea in Supreme Court, New York County, for second degree burglary and sentence of sixteen years to life imprisonment.  (Dkt. No. 2: Pet. ¶¶ 1-4.)  Reed's habeas petition asserts that he "was denied his rights to due process and the effective assistance of counsel when the [sentencing] court denied his pro-se motions to withdraw his guilty plea and to appoint him new counsel."  (Pet. ¶ 12.)

        For the reasons set forth below, Reed's habeas petition should be DENIED.

**FACTS**

**Background**

        On the evening of December 27, 2005, Reed climbed through the window of Gustavo Dasilva's Manhattan hotel room.  (Dkt. No. 7: State Br. at 2; see Dkt. No. 8: Ex. D: Reed 1st Dep't

Br. at 2.)[1]  Reed was caught rifling through Dasilva's belongings and, after being chased from the room, was arrested by the police, who recovered items belonging to Dasilva from Reed's person. (State Br. at 2.)  On December 30, 2005, a New York County grand jury indicted Reed for second degree burglary.  (State Br. at 2; see Reed 1st Dep't Br. at 2.)

On March 17, 2006, Reed's counsel filed an omnibus motion to suppress post-arrest statements and identification evidence.  (State Br. at 2.)  A Huntley/Wade hearing and trial were scheduled to take place before Justice Edward J. McLaughlin on September 19, 2006.  (State Br. at 2-3.)

**Reed's Guilty Plea**

On September 19, 2006, just as Reed's Huntley/Wade hearing was about to begin, the District Attorney's Office offered Reed a sentence of sixteen years to life imprisonment in exchange for a guilty plea.  (Dkt. No. 8: Ex. A: 9/19/06 Plea Transcript ["P."] 2-3.)[2]  After consulting with his wife and lawyer (Claudia Conway of the Legal Aid Society), Reed accepted the offer and entered a plea of guilty before Justice McLaughlin to second degree burglary.  (P. 4-5.)

Justice McLaughlin first inquired as to whether Reed understood the nature of the charges:

---

[1]  References to "Ex." are to the exhibits to the affidavit of Assistant Attorney General Lisa Ellen Fleischmann.  (Dkt. No. 8.)

[2]  One week earlier, the DA's Office had offered Reed a sentence of twelve years to life imprisonment in exchange for his guilty plea.  (See Dkt. No. 7: State Br. at 3; P. 3.) However, because the DA's Office already had booked the complaining witnesses's flight to New York from Brazil and could no longer obtain a refund, that offer was withdrawn prior to the September 19, 2006 hearing.  (State Br. at 3; P. 3-4.)

        THE COURT:   . . . Do you understand that you just now pled guilty to a felony crime?

        THE DEFENDANT:  Yes.

        THE COURT:  It's charged that on December 27th of last year in Manhattan, in a hotel, the Regency at 215 West 34th Street, at about 6:30 in the evening, you entered that building and more specifically, you entered somebody's room intending to commit a crime in that room.

        Do you understand the nature of the charge?

        THE DEFENDANT:  Yes.

        THE COURT:  Did you do that?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you understand that's what you're pleading guilty to?

        THE DEFENDANT:  Yes.

(P. 5-6.)  Justice McLaughlin next advised Reed of the rights he was giving up by pleading guilty:

        THE COURT:  Do you understand that by pleading guilty, we're not going to have the hearings and the trial?

        The plea of guilty by somebody accused of a crime, a felony[,] has the same legal meaning as if a jury had been assembled and convicted the person of the felony crime.

        In other words, because you're pleading guilty, we're not going to have the trial.

        You are not going to be given the option -- of course, there would be no, there would be no obligation -- you are not going to be given the option of testifying.

        Your lawyer's not going to have the opportunity of cross-examining anyone testifying against you.

        And the People are not going to have to prove the case beyond a reasonable doubt.

> Do you understand[,] as [] I [have] said now a couple of times[,] because you are pleading guilty, you are not going to have the trial?
>
> THE DEFENDANT:  Yes.

(P. 6-7.)  Justice McLaughlin discussed the sentence promised as part of the plea agreement:

> THE COURT:  As you came into court today, you were charged with a violent felony offense.
>
> If you were convicted of this charge, the sentencing could not have been any less than sixteen to life.
>
> It could have been as high as twenty-five to life.
>
> In a real sense, your choice was not between twelve and sixteen to life, but more realistically between sixteen to life and twenty to twenty-two years to life.
>
> Do you understand that because you're pleading guilty at this juncture, you are going to receive a sentence of sixteen to life?
>
> THE DEFENDANT:  Yes, I understand.

(P. 7.)  After explaining that a sentence of sixteen years to life did not mean that Reed necessarily would spend the rest of his life in prison (P. 7-10), Justice McLaughlin inquired into the knowing and voluntary nature of Reed's plea:

> THE COURT:  [Your attorney] has spoken to you about what your rights and options are, correct?
>
> THE DEFENDANT:  No -- she spoke with me, yes.
>
> THE COURT:  Fine.
>
> THE DEFENDANT:  And -- go ahead.
>
> THE COURT:  Are you pleading guilty because you are, in fact, guilty of this charge?
>
> THE DEFENDANT:  Yes.

THE COURT:  Are you under the influence of any drug or alcohol today?

THE DEFENDANT:  No.

. . . .

THE COURT:  If you told me or some other Judge something different in the future different from what you are -- what you're saying today, the future statement would not be true because you told me the truth today, am I correct?

THE DEFENDANT:  Right.

(P. 11-12.)  Justice McLaughlin remanded Reed and adjourned sentencing until October 2, 2006.

(P. 12-13.)

## Reed's Motion to Withdraw His Guilty Plea

On September 19, 2006, the same day that he entered his guilty plea, Reed filed a pro se motion to withdraw his guilty plea.  (Dkt. No. 7: State Br. at 5; Dkt. No. 8: Ex. B: Reed Motion to Withdraw Guilty Plea.)  Reed alleged that: (1) "he was not fully aware of the circumstances involved when he made [his] guilty plea"; (2) he did not know "the full consequences of the plea"; (3) he "plead guilty for reasons which are outside of the record of the Court proceedings"; (4) he "was unaware of the facts that he has a good meritorious defense to the prosecution"; (5) "he is not guilty of the offense(s) to which he plead guilty"; and (6) "[t]he plea was not taken knowingly and intelligently."  (Motion to Withdraw Guilty Plea ¶¶ 3-5.)

Also on September 19, 2006, Reed filed a complaint with the First Department Disciplinary Committee alleging that he "was not represented correctly."  (Ex. I:  Reed Disciplinary Comm. Compl. at 2.)  According to Reed, Conway withheld "information from [him] concerning a motion she has filed" and "was not willing to speak up for [him] in court concerning the . . . time

that is chargeable to the People." (Id.)  Reed also complained that he never received a "true [i]ndictment," was "denied a Dunaway hearing" and was not put in a "line up." (Id.) Reed requested that he "be able to change lawyers" and "take back [his] plea." (Id.)

On September 21, 2006, Reed filed an additional pro se motion for reassignment of counsel, asserting that Conway failed to:

A.    visit [him] at [his] place of confinement;

B.    inform [him] of any pertinent motion made, including Bill of Particulars, Omnibus, Suppression, etc., filed on [his] behalf;

C.    conduct an investigation in the matter of this action on [his] behalf;

D.    make any bail requests or reduction applications on [his] behalf, just to name a few.

(Ex. J: Motion for Reassignment of Counsel & 9/21/06 Reed Aff. ¶¶ 6(A)-(D).)

**Sentencing**

On October 2, 2006, Reed appeared before Justice McLaughlin for sentencing. (Dkt. No. 8: Ex. C: Sentencing Transcript ["S."].)

At the outset, Justice McLaughlin addressed Reed's pro se motion to withdraw his guilty plea. (S. 2-3.) Justice McLaughlin commented that Reed's motion consisted of "a standard form that's available at Rikers Island" and contained no factual allegations. (S. 3.) Justice McLaughlin stated that he was "at a loss" as to why Reed's motion to withdraw his guilty plea should be granted. (S. 8.) Reed alleged that Conway had "coerced" him to accept the plea and that he was not in his "right state of mind" when he pled guilty because he "was under medication and [could] prove it." (S. 4-5, 9-11, 14-15.)

In light of Reed's statements to the contrary at the time of his plea, Justice McLaughlin did not believe that Reed was coerced or impaired when he entered his plea. (S. 8-9, 11, 15.)   Justice McLaughlin opined that Reed merely had changed his mind now that the "complaining witness is back in Brazil." (S. 9.)  Moreover, given the strength of the State's case and the substantial sentence Reed faced if convicted at trial, Justice McLaughlin said the plea offer was in Reed's "interest" and that Conway "should be fired" if she did not recommend it. (S. 5-6, 10.) Justice McLaughlin concluded that Reed's motion was "legally not persuasive" and that allowing Reed to withdraw his guilty plea would make "a mockery" of the process. (S. 10.)

Justice McLaughlin also addressed Reed's Disciplinary Committee allegations. Justice McLaughlin explained that although Reed might not have received an original signed indictment, there was a "valid  indictment" in his file and that the "calendar Judge . . . would have dismissed the case" if there had not been one. (S. 3-4.)  Justice McLaughlin also observed that Conway had filed an omnibus motion on Reed's behalf and secured a favorable disposition from the District Attorney's Office. (S. 5.)  When asked what more Conway "could have [] done," Reed responded that Conway did not keep him apprised of developments in the case and "could have spoken up more" regarding the speedy trial issue. (S. 4, 6-8.)  Justice McLaughlin found that Reed was aware of all the pertinent facts prior to entering his guilty plea and that "the only reason we didn't have your trial the day it was sent here for the hearing and trial was you said I will take the 16." (S. 5, 7-8.)

When Justice McLaughlin announced that he intended to impose the promised sentence, Reed exclaimed:  "I am getting up.  I am done. . . . You are not going to make me do no 16 years." (S. 10-12.)  Justice McLaughlin responded, "[o]f course I am," and ordered Reed to "sit

down." (S. 12.)  When Reed refused to sit, court officers intervened.  (S. 11-12.)  Justice McLaughlin adjudicated Reed a "mandatory persistent felony offender" and sentenced him to sixteen years to life imprisonment.  (S. 12-14.)

**Reed's Direct Appeal**

Represented by new counsel (the Center for Appellate Litigation), Reed appealed to the First Department claiming, inter alia, that Justice McLaughlin "did not provide him a reasonable opportunity to advance the grounds for his plea withdrawal motion with unconflicted counsel," thereby denying his "constitutional rights to due process and the effective assistance of counsel." (Dkt. No. 8: Ex. D: Reed 1st Dep't Br. at 9.)

On March 12, 2009, the First Department unanimously affirmed Reed's conviction:

> After sufficient inquiry, the court properly denied defendant's motion to withdraw his guilty plea.  The record establishes that the plea was voluntary, and that defendant's attacks on his counsel's representation were without merit.  "[T]he court had no reason to believe that the allegedly coercive conduct amounted to anything more than sound advice to accept the favorable plea offer."  Accordingly, there was no conflict of interest and no reason to assign new counsel for the plea withdrawal application.  Defendant's assertion that medication affected his ability to understand the plea proceedings was unsupported by any evidence, as well as contradicted by the plea allocution record.

People v. Reed, 60 A.D.3d 475, 475-76, 874 N.Y.S.2d 470, 471 (1st Dep't 2009) (citations omitted).

On June 15, 2009, the New York Court of Appeals denied leave to appeal.  People v. Reed, 12 N.Y.3d 919, 884 N.Y.S.2d 700 (2009).

**Reed's Federal Habeas Corpus Petition**

Reed's pro se habeas corpus petition alleged that he was "denied his right to Due Process and the effective assistance of counsel when [Justice McLaughlin] denied his request to withdraw his plea and assign new counsel."  (Dkt. No. 2: Pet. ¶ 12(a); Dkt. No. 8: Ex. D: Reed 1st

Dep't Br. at 8-14.)  Specifically, Reed alleged that Justice McLaughlin denied him a reasonable

opportunity to prove that "he was under the influence of medication at the time of his plea" and that

"his attorney coerced him into taking the plea."  (Pet. ¶ 12(a); Reed 1st Dep't Br. at 11-12.)  Reed

also alleged that because his attorney coercion claim rendered Conway conflicted, Reed was denied

the effective assistance of counsel on his motion to withdraw his plea.  (Pet. ¶ 12(a); Reed 1st Dep't

Br. at 14.)

## ANALYSIS

### I.      THE AEDPA REVIEW STANDARD

Before the Court can determine whether petitioner is entitled to federal habeas relief,

the Court must address the proper habeas corpus review standard under the Antiterrorism and

Effective Death Penalty Act ("AEDPA").

In enacting the AEDPA, Congress significantly "modifie[d] the role of federal habeas

courts in reviewing petitions filed by state prisoners."  Williams v. Taylor, 529 U.S. 362, 403, 120

S. Ct. 1495, 1518 (2000).  The AEDPA imposed a more stringent review standard, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim --
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the Supreme
> > Court of the United States; or
> >
> > (2)  . . . was based on an unreasonable determination of the facts in light of
> > the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).[3/]

   The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meaning." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 404-05, 120 S. Ct. at 1519.[4/]  Both, however, "restrict[] the source of clearly established law to [the Supreme] Court's jurisprudence." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 412, 120 S. Ct. at 1523.[5/]  "That federal law, as defined by the

---

[3/]  <u>See also</u>, <u>e.g.</u>, <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. 1411, 1418 (2009); <u>Henry</u> v. <u>Poole</u>, 409 F.3d 48, 67 (2d Cir. 2005), <u>cert. denied</u>, 547 U.S. 1040, 126 S. Ct. 1622 (2006); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d 69, 78-79 (2d Cir. 2010) (en banc);  <u>Howard</u> v. <u>Walker</u>, 406 F.3d 114, 121-22 (2d Cir. 2005); <u>Cox</u> v. <u>Donnelly</u>, 387 F.3d 193, 197 (2d Cir. 2004); <u>Dallio</u> v. <u>Spitzer</u>, 343 F.3d 553, 559-60 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 961, 124 S. Ct. 1713 (2004); <u>Eze</u> v. <u>Senkowski</u>, 321 F.3d 110, 120 (2d Cir. 2003) ("AEDPA changed the landscape of federal habeas corpus review by 'significantly curtail[ing] the power of federal courts to grant the <u>habeas</u> petitions of state prisoners.'" (quoting <u>Lainfiesta</u> v. <u>Artuz</u>, 253 F.3d 151, 155 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1019, 122 S. Ct. 1611 (2002))).

[4/]  <u>Accord</u>, <u>e.g.</u>, <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d 175, 181 (2d Cir.), <u>cert. denied</u>, 540 U.S. 1091, 124 S. Ct. 962 (2003); <u>Jones</u> v. <u>Stinson</u>, 229 F.3d 112, 119 (2d Cir. 2000); <u>Lurie</u> v. <u>Wittner</u>, 228 F.3d 113, 125 (2d Cir. 2000), <u>cert. denied</u>, 532 U.S. 943, 121 S. Ct. 1404 (2001); <u>Clark</u> v. <u>Stinson</u>, 214 F.3d 315, 320 (2d Cir. 2000), <u>cert. denied</u>, 531 U.S. 1116, 121 S. Ct. 865 (2001).

[5/]  <u>Accord</u>, <u>e.g.</u>, <u>Georgison</u> v. <u>Donelli</u>, 588 F.3d 145, 153-54 (2d Cir. 2009); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d 160, 164 (2d Cir.), <u>cert. denied</u>, 130 S. Ct. 642, (2009); <u>Carey</u> v. <u>Musladin</u>, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) ("Given the lack of holdings from this Court regarding [this issue], it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"); <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. 652, 661, 124 S. Ct. 2140, 2147 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 519, 123 S. Ct. 2527, 2534 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 538 U.S. 63, 71, 123 S. Ct. 1166, 1172 (2003) ("Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'"); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79 ("To qualify as 'clearly established' for the purposes of federal habeas review, a rule of law must be embodied in the 'holdings, as opposed to the dicta,' of Supreme Court precedent."); <u>Hargett</u> v. <u>Giambruno</u>, 291 F. App'x 402, 403 (2d Cir. 2008); <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Tueros</u> v. <u>Greiner</u>, 343 F.3d 587, 591 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1047, 124 S. Ct. 2171 (2004); <u>Parsad</u> v. <u>Greiner</u>, 337 F.3d at 181; <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d 1197, 1200 (2d (continued...)

Supreme Court, may be either a generalized standard enunciated in the [Supreme] Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d at 42; <u>accord</u>, <u>e.g.</u>, <u>Davis</u> v. <u>Grant</u>, 532 F.3d 132, 140 (2d Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1312 (2009).  "A petitioner can not win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent."  <u>Yung</u> v. <u>Walker</u>, 341 F.3d at 110; <u>accord</u>, <u>e.g.</u>, <u>DelValle</u> v. <u>Armstrong</u>, 306 F.3d at 1200.

> As to the "contrary to" clause:
>
> A state-court decision will certainly be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. . . .  A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.

<u>Williams</u> v. <u>Taylor</u>, 529 U.S. at 405-06, 120 S. Ct. at 1519-20.[6/]

---

[5/]   (...continued)
Cir. 2002); <u>Yung</u> v. <u>Walker</u>, 341 F.3d 104, 109-10 (2d Cir. 2003); <u>Kennaugh</u> v. <u>Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909, 123 S. Ct. 251 (2002); <u>Loliscio</u> v. <u>Goord</u>, 263 F.3d 178, 184 (2d Cir. 2001); <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d 303, 309 (2d Cir. 2001).

[6/]   <u>Accord</u>, <u>e.g.</u>, <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1419 (The Supreme "Court has held on numerous occasions that it is not 'an unreasonable application of clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this [Supreme] Court." (quotation omitted)); <u>Brown</u> v. <u>Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438-39 (2005); <u>Bell</u> v. <u>Cone</u>, 543 U.S. 447, 452-53, 125 S. Ct. 847, 851 (2005); <u>Price</u> v. <u>Vincent</u>, 538 U.S. 634, 640, 123 S. Ct. 1848, 1853 (2003); <u>Lockyer</u> v. <u>Andrade</u>, 123 S. Ct. at 1173-74; <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d 36, 47-48 (2d Cir. 2010); <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d 149, 156 (2d Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 320 (2010); <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 164; <u>Davis</u> v. <u>Grant</u>, 532 F.3d at 140; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d 238, 242 (2d Cir. 2006), <u>cert. denied</u>, 549 U.S. 1215, 127 S. Ct. 1267 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 68; <u>Howard</u> v. <u>Walker</u>, 406 F.3d at 122; <u>Rosa</u> v. <u>McCray</u>, 396 F.3d 210, 219 (2d Cir.), <u>cert. denied</u>, 546
(continued...)

In Williams, the Supreme Court explained that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams v. Taylor, 529 U.S. at 413, 120 S. Ct. at 1523.[7]  However, "[t]he term 'unreasonable' is . . . difficult to define."  Williams v. Taylor, 529 U.S. at 410, 120 S. Ct. at 1522.  The Supreme Court made clear that "an unreasonable application of federal law is different from an incorrect application of federal law."  Id.[8]  Rather, the issue is "whether the state court's

---

[6]    (...continued)
U.S. 889, 126 S. Ct. 215 (2005); Tueros v. Greiner, 343 F.3d at 591; DelValle v. Armstrong, 306 F.3d at 1200; Yung v. Walker, 341 F.3d at 109; Kennaugh v. Miller, 289 F.3d at 42; Loliscio v. Goord, 263 F.3d at 184; Lurie v. Wittner, 228 F.3d at 127-28.

[7]    Accord, e.g., Waddington v. Sarausad, 555 U.S. 179, 129 S. Ct. 823, 831 (2009); Brown v. Payton, 544 U.S. at 141, 125 S. Ct. at 1439; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2534-35; Bierenbaum v. Graham, 607 F.3d at 48; Brisco v. Ercole, 565 F.3d 80, 87 (2d Cir.), cert. denied, 130 S. Ct. 739 (2009); Jones v. West, 555 F.3d 90, 96 (2d Cir. 2009); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006), cert. denied, 549 U.S. 1257, 127 S. Ct. 1383 (2007); Howard v. Walker, 406 F.3d at 122; Parsad v. Greiner, 337 F.3d at 181.

[8]    See also, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010); Waddington v. Sarausad, 129 S. Ct. at 831; Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v. Smith, 539 U.S. at 520, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct. at 1853 ("As we have explained: '[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S. Ct. 357, 360 (2002))); Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175; Dunlap v. Burge, 583 F.3d at 165-66 (A "federal court might agree with a petitioner that the relevant federal law should have been interpreted differently than the way it was interpreted by the state court yet still conclude that the state court's application of the federal law was not unreasonable."); Brisco v. Ercole, 565 F.3d at 87-88; Jones v. West, 555 F.3d at 96; Davis v. Grant, 532 F.3d at 140; Hawkins v. Costello, 460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396 F.3d at 219; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d at 124-25; DelValle v. Armstrong, 306 F.3d at 1200 ("With regard to issues of law, therefore, if the
(continued...)

application of clearly established federal law was objectively unreasonable."  Williams v. Taylor, 529 U.S. at 409, 120 S. Ct. at 1521.[9/]  "Objectively unreasonable" is different from "clear error."  Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness.").  This is a "'substantially higher threshold'" than incorrectness.  Renico v. Lett, 130 S. Ct. at 1862; accord, e.g., Knowles v. Mirzayance, 129 S. Ct. at 1420.[10/]  Federal habeas relief is precluded "so long as

---

[8/]      (...continued)
          state court's decision was not an unreasonable application of, or contrary to, clearly
          established federal law as defined by Section 2254(d), we may not grant habeas relief even
          if in our judgment its application was erroneous.").

[9/]      Accord, e.g., Yarborough v. Alvarado, 541 U.S. at 664, 124 S. Ct. at 2150; Wiggins v.
          Smith, 539 U.S. at 520-21, 123 S. Ct. at 2535; Price v. Vincent, 538 U.S. at 641, 123 S. Ct.
          at 1853; Lockyer v. Andrade, 538 U.S. at 75, 123 S. Ct. at 1174-75; Woodford v. Visciotti,
          537 U.S. at 25-27, 123 S. Ct. at 360-61; Portalatin v. Graham, 624 F.3d at 79; Dunlap v.
          Burge, 583 F.3d at 165; Davis v. Grant, 532 F.3d at 140; Mosby v. Senkowski, 470 F.3d 515,
          519 (2d Cir. 2006), cert. denied, 552 U.S. 836, 128 S. Ct. 75 (2007); Hawkins v. Costello,
          460 F.3d at 243; Lynn v. Bliden, 443 F.3d at 246; Henry v. Poole, 409 F.3d at 68; Howard
          v. Walker, 406 F.3d at 122; Cox v. Donnelly, 387 F.3d at 197; Eze v. Senkowski, 321 F.3d
          at 125; Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002); Loliscio v. Goord, 263 F.3d at 184;
          Lurie v. Wittner, 228 F.3d at 128-29.

[10/]     However, the Second Circuit has explained "that while '[s]ome increment of incorrectness
          beyond error is required . . . the increment need not be great; otherwise, habeas relief would
          be limited to state court decisions so far off the mark as to suggest judicial incompetence.'"
          Jones v. Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir.
          2000)); accord, e.g., Brisco v. Ercole, 565 F.3d at 88; Jones v. West, 555 F.3d at 96; Brown
          v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008) ("[W]e have observed that the 'unreasonable
          application' standard 'falls somewhere between merely erroneous and unreasonable to all
          reasonable jurists.'"); Davis v. Grant, 532 F.3d at 140; Lynn v. Bliden, 443 F.3d at 246;
          Henry v. Poole, 409 F.3d at 68; Howard v. Walker, 406 F.3d at 122; Rosa v. McCray, 396
          F.3d at 219; Cox v. Donnelly, 387 F.3d at 197, 200-01; Eze v. Senkowski, 321 F.3d at 125;
          Ryan v. Miller, 303 F.3d at 245; Yung v. Walker, 341 F.3d at 110; Loliscio v. Goord, 263
          F.3d at 184.

'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington</u> v.

<u>Richter</u>, 131 S. Ct. 770, 786 (2011).

"[T]he range of reasonable judgment can depend in part on the nature of the relevant

rule." <u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149.[11] "Even if the state court issued

a decision 'contrary to' clearly established Supreme Court law, a petitioner 'cannot obtain relief . . .

unless application of a <u>correct</u> interpretation of that [Supreme Court] decision leads to the

conclusion that his rights were violated.'" <u>Cousin</u> v. <u>Bennett</u>, 511 F.3d 334, 339 (2d Cir.), <u>cert.</u>

<u>denied</u>, 553 U.S. 1096, 128 S. Ct. 2910 (2008) (citation omitted).

Moreover, the Second Circuit has held "that a state court determination is reviewable

under AEDPA if the state decision unreasonably failed to extend a clearly established, Supreme

---

[11]     The Supreme Court explained:

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

<u>Yarborough</u> v. <u>Alvarado</u>, 541 U.S. at 664, 124 S. Ct. at 2149; <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 786; <u>Renico</u> v. <u>Lett</u>, 130 S. Ct. at 1864; <u>Knowles</u> v. <u>Mirzayance</u>, 129 S. Ct. at 1420 (Where the Supreme Court "standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."); <u>Portalatin</u> v. <u>Graham</u>, 624 F.3d at 79; <u>Ortiz</u> v. <u>N.Y.S. Parole in Bronx, N.Y.</u>, 586 F.3d at 157; <u>Dunlap</u> v. <u>Burge</u>, 583 F.3d at 166; <u>Hawkins</u> v. <u>Costello</u>, 460 F.3d at 243.

Court defined, legal principle to situations which that principle should have, in reason, governed."

Kennaugh v. Miller, 289 F.3d at 45.[12/]

Under the AEDPA, in short, the federal courts "must give the state court's adjudication a high degree of deference." Yung v. Walker, 341 F.3d at 109; accord, e.g., Renico v. Lett, 130 S. Ct. at 1862 ("AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" (citations omitted)); Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Mosby v. Senkowski, 470 F.3d at 519. "[I]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to th[e] record in an unreasonable manner." Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009); accord, e.g., Georgison v. Donelli, 588 F.3d at 154. As the Supreme Court explained:

> If this standard is difficult to meet, that is because it was meant to be. . . .
> [§ 2254(d)] preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decisions conflict with [the
> Supreme] Court's precedents. It goes no further. . . . As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the state court's
> ruling on the claim being presented in federal court was so lacking in justification
> that there was an error well understood and comprehended in existing law beyond
> any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. at 786-87.

---

12/     Accord, e.g., Bierenbaum v. Graham, 607 F.3d at 47-48; Davis v. Grant, 532 F.3d at 140-41; Tueros v. Greiner, 343 F.3d at 591; Yung v. Walker, 341 F.3d at 109; see Yarborough v. Alvarado, 541 U.S. at 665-66, 124 S. Ct. at 2150-51 ("The petitioner contends that if a habeas court must extend a rationale before it can apply to the facts at hand then the rationale cannot be clearly established at the time of the state-court decision. There is force to this argument. Section 2254(d)(1) would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law. At the same time, the difference between applying a rule and extending it is not always clear. Certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt." (citations omitted)).

Even where the state court decision does not specifically refer to either the federal claim or to relevant federal case law, the deferential AEDPA review standard applies.

> Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. And as this Court has observed, a state court need not cite or even be aware of [Supreme Court] cases under § 2254(d). Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.

Harrington v. Richter, 131 S. Ct. at 784 (citations to Sellan v. Kuhlman, 261 F.3d at 312, & other cases omitted); accord, e.g., Bell v. Cone, 543 U.S. at 455, 125 S. Ct. at 853; Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365 (2002) (State court not required to cite Supreme Court cases, or even be aware of them, to be entitled to AEDPA deference, "so long as neither the reasoning nor the result of the state-court decision contradicts them."); Wilson v. Mazzuca, 570 F.3d 490, 499 (2d Cir. 2009) ("Where, as here, 'a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent.'").[13]/   Even if the federal court holds an evidentiary hearing, the deferential AEDPA review standard applies.  Wilson v. Mazzuca, 570 F.3d at 501-02 ("Where . . . a district court has

---

[13]/   See also, e.g., Wade v. Herbert, 391 F.3d 135, 140, 142 (2d Cir. 2004) (Appellate Division held claim was "'without merit.'"  "Such a summary determination, even absent citation of federal case law, is a determination 'on the merits' and as such requires the deference specified by § 2254."  Moreover, "[i]f any reasonable ground was available [for the state court's decision], we must assume the [state] court relied on it."); Francolino v. Kuhlman, 365 F.3d 137, 141 (2d Cir.) (Where "the Appellate Division concluded its opinion by stating that it had 'considered and rejected defendants' remaining claims,'" AEDPA deference applies.), cert. denied, 543 U.S. 872, 125 S. Ct. 110 (2004); Jenkins v. Artuz, 294 F.3d 284, 291 (2d Cir. 2002) ("In Sellan, we found that an even more concise Appellate Division disposition-the word 'denied'-triggered AEDPA deference.").

performed additional fact finding, the court must then ask whether the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' in light of any newly-discovered facts. . . . [W]e are directed to apply the same AEDPA standard that would otherwise be in force, now in light of the new information that has been obtained through a § 2254(e) hearing.") (citation omitted).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. at 784-85.  Where the state court decision is not clear as to whether it rests on federal law or state procedural law, the Second Circuit in Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006), cert. denied, 549 U.S. 1133, 127 S. Ct. 976 (2007), instructed that the court must "examine the three clues laid out in Coleman, Quirama and Sellan" – that is, "(1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances." Jimenez v. Walker, 458 F.3d at 145 & n.16; accord, e.g., Clark v. Perez, 510 F.3d 382, 394 (2d Cir.), cert. denied, 129 S. Ct. 130 (2008).[14]

---

[14]     Using these three factors, the court should classify the decision as either:

> (1)     fairly appearing to rest primarily on federal law or to be interwoven with federal law or
>
> (2)     fairly appearing to rest primarily on state procedural law.

> Absent a clear and express statement of reliance on a state procedural bar, the Harris presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim.  Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C.
> (continued...)

Finally, "[i]f [the] court finds that the state court engaged in an unreasonable application of established law, resulting in constitutional error, it must next consider whether such error was harmless." Howard v. Walker, 406 F.3d at 122.

In addition to the standard of review of legal issues, the AEDPA provides a deferential review standard for state court factual determinations: "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48; Lynn v. Bliden, 443 F.3d at 246-47; Rosa v. McCray, 396 F.3d at 220. "The petitioner bears the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" Parsad v. Greiner, 337 F.3d at 181 (quoting § 2254(e)(1)); accord, e.g., Bierenbaum v. Graham, 607 F.3d at 48 ("A state court's determination of a factual issue is presumed

---

14/      (...continued)

§ 2254(d). The Harris presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.

The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised. The middle ground . . . does not exist.

Jimenez v. Walker, 458 F.3d at 145-46 (citations & fns. omitted); accord, e.g., Hawkins v. Costello, 460 F.3d at 242 ("In Jimenez v. Walker, we recently made clear that when a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits."). Of course, "[i]f there is no [state court] adjudication on the merits [and no procedural bar], then the pre-AEDPA, de novo standard of review applies." Cotto v. Herbert, 331 F.3d 217, 230 (2d Cir. 2003); see also Wilson v. Mazzuca, 570 F.3d at 500 n.8; Jimenez v. Walker, 458 F.3d at 145 n.17.

to be correct, and may only be rebutted by clear and convincing evidence."); <u>Brown</u> v. <u>Alexander</u>, 543 F.3d at 100; <u>Lynn</u> v. <u>Bliden</u>, 443 F.3d at 246-47.

## II.   REED'S HABEAS CLAIMS SHOULD BE DENIED

### A.   Justice McLaughlin Properly Denied Reed's Request To Withdraw His Guilty Plea Without Holding an Evidentiary Hearing or Appointing New Counsel

Reed claims that Justice McLaughlin deprived him of his due process rights by denying his motion to withdraw his guilty plea without a hearing.  (Dkt. No. 2: Pet. ¶ 12(a); <u>see</u> pages 8-9 above.)  Reed also claims that Justice McLaughlin deprived him of his right to "the effective assistance of counsel" because he did not assign new counsel after Reed asserted that Conway had "coerced him into taking the plea."  (Pet. ¶ 12(a); <u>see</u> pages 8-9 above.)

In <u>Hines</u> v. <u>Miller</u>, 318 F.3d 157 (2d Cir.), <u>cert. denied</u>, 538 U.S. 1040, 123 S. Ct. 2089 (2003), the Second Circuit considered and rejected substantially similar claims.  In <u>Hines</u>, petitioner Hines pled guilty to second degree murder, but before sentencing "filed a <u>pro se</u> motion to withdraw his plea on the ground that he was innocent and had been coerced into pleading guilty by his attorney."  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  At sentencing, "defense counsel declined to comment on [petitioner's] allegation that counsel had pressured him into pleading guilty, but asked to be relieved in the event the court allowed withdrawal of the plea," and asked "to have new counsel appointed to argue the motion on proper papers."  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  Hines told the state court that despite his assertions at the time of his plea that he had not been coerced, "he was innocent of the crime and had only pleaded guilty 'out of fear, pressure, extreme pressure.'"  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  The sentencing court denied Hines' motion to withdraw his guilty plea, asserting that Hines "had inculpated himself fully when he entered the guilty plea and that he had

stated then that no one had forced him to plead guilty."  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.  The

Appellate Division affirmed, despite Hines' claims that the trial court erred in denying the motion

to withdraw his guilty plea without appointing new counsel and without holding an evidentiary

hearing.  <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 159.

        The Second Circuit first addressed petitioner Hines' claim that he at least was entitled

to an evidentiary hearing in state court, and rejected that claim under the AEDPA, holding:

>         Both federal and state precedent have established that a defendant is not
> entitled as a matter of right to an evidentiary hearing on a motion to withdraw a
> guilty plea.  In light of these precedents, the [state sentencing court's] failure to hold
> an evidentiary hearing on a motion to withdraw a plea does not offend a deeply
> rooted or "fundamental" principle of justice.  Thus, under AEDPA's deferential
> standard and the Supreme Court's decision in <u>Medina</u>,[15/] the Appellate Division's
> conclusion that the state court had conducted a "thorough inquiry, . . . [and] properly
> denied defendant's motion to withdraw his guilty plea [where] [t]he record
> establishes that defendant made a voluntary plea and fails to substantiate his claims
> of coercion and innocence," was not an unreasonable application of clearly
> established Federal law.

<u>Hines</u> v. <u>Miller</u>, 318 F.3d at 162 (citations omitted); <u>see</u>, <u>e.g.</u>, <u>Brown</u> v. <u>Laclaire</u>, 07 Civ. 5906, 2010

WL 1221878 at *10 (S.D.N.Y. Mar. 29, 2010) ("[T]he trial judge's decision not to hold an

evidentiary hearing on Petitioner's motion to vacate the judgment resulting from his guilty plea . . .

did not violate any constitutional requirements of due process."); <u>Flemming</u> v. <u>New York</u>, 06 Civ.

15226,  2009 WL 6325520 at *22 (S.D.N.Y. Aug. 10, 2009), <u>report & rec. adopted</u>, 2010 WL

1328376 (S.D.N.Y. Apr. 1, 2010); <u>Smith</u> v. <u>Filion</u>, No. 04-CV-1026, 2007 WL 274780 at *7

---

[15/]      The Supreme Court found that the analytical framework used to decipher whether state
criminal procedural rules violate due process is to determine if they "'offend[] some principle
of justice so rooted in the traditions and conscience of our people as to be ranked as
fundamental.'"  <u>Medina</u> v. <u>California</u>, 505 U.S. 437, 445-46, 112 S. Ct. 2572, 2577 (1992)
(quoting  <u>Patterson</u> v. <u>New York</u>, 432 U.S. 197, 202, 97 S. Ct. 2319, 2322 (1977)).

(N.D.N.Y. Jan. 26, 2007) (A "criminal defendant seeking permission to withdraw his or her plea is

not, as a matter of federal law, entitled to an evidentiary hearing with respect to such a motion."

(citing <u>Hines</u>)); <u>Rivera</u> v. <u>Superintendent, Wyoming Corr. Fac.</u>, No. 9:03-CV-1058, 2006 WL

2946265 at *8 (N.D.N.Y. Oct. 12, 2006) (same); <u>Allen</u> v. <u>McGinnis</u>, No. 05-CV-2699, 2006 WL

1982871 at *6 (E.D.N.Y. July 13, 2006) ("A trial judge in response to a defendant seeking to

withdraw a guilty plea is not required to hold an evidentiary hearing, or to grant the withdrawal

motion."); <u>Viscomi</u> v. <u>Conway</u>, 438 F. Supp. 2d 163, 175-76 (W.D.N.Y. 2006) (Petitioner "was not

entitled, as a matter of federal constitutional law, to a full evidentiary hearing on his motion to

withdraw" his guilty plea. (citing <u>Hines</u>)).[16]

   In accordance with <u>Hines</u> and its progeny, this Court finds that Justice McLaughlin's

denial of Reed's motion to withdraw his guilty plea without conducting an evidentiary hearing was

not an unreasonable application of clearly established federal law.

---

[16] See also, e.g., <u>Reyes</u> v. <u>Phillips</u>, 02 Civ. 7319, 2005 WL 2757541 at *6 (S.D.N.Y. Oct. 24, 2005); <u>Rodriguez</u> v. <u>Zon</u>, No. 01-CV-2036, 2004 WL 1752418 at *5 (E.D.N.Y. Aug. 5, 2004); <u>Falas</u> v. <u>Phillips</u>, 03 Civ. 4839, 2004 WL 1730289 at *11-12 (S.D.N.Y. Aug. 3, 2004), <u>report & rec. adopted</u>, 2005 WL 756886 (S.D.N.Y. Apr. 1, 2005); <u>Rowe</u> v. <u>Miller</u>, 299 F. Supp. 2d 231, 240-41 (S.D.N.Y. 2004); <u>Martinez</u> v. <u>Costello</u>, 03 Civ. 2763, 2004 WL 26306 at *6-7 (S.D.N.Y. Jan. 5, 2004) ("In light of the lack of a federal constitutional right to an evidentiary hearing in this situation [i.e., seeking to withdraw a guilty plea], the Appellate Division's decision upholding the failure to hold such a hearing was not 'contrary to, or involved an unreasonable application of, clearly established Federal law.'"); <u>Rivera</u> v. <u>New York</u>, 00 Civ. 0399, 2003 WL 22234697 at *4 (S.D.N.Y. Aug. 28, 2003); <u>Cosey</u> v. <u>Walsh</u>, 02 Civ. 6251, 2003 WL 1824640 at *3 n.6 (S.D.N.Y. Apr. 8, 2003); <u>Jenkins</u> v. <u>Artuz</u>, No. 98-CV-7837, 00-Misc.-0066, 2003 WL 21499889 at *3 (E.D.N.Y. June 13, 2003) (Weinstein, D.J.); <u>Hutchings</u> v. <u>Herbert</u>, 260 F. Supp. 2d 571, 581 (W.D.N.Y. 2003).

The Second Circuit in <u>Hines</u> next turned to the issue of whether the trial court erred in not appointing new counsel to argue the petitioner's plea withdrawal motion. <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 162-64. The Second Circuit stated that:

> The Supreme Court has, of course, issued numerous opinions concerning various aspects of a defendant's right to counsel. But the [Supreme] Court has never specifically addressed a claim such as the one before us, nor has it stated how such a claim should be analyzed, <u>i.e.</u>, as a claim that petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea, or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest adversely affected counsel's performance.

<u>Hines</u> v. <u>Miller</u>, 318 F.3d at 163 (citations omitted).[17/]

The Second Circuit concluded that:

> Given the many divergent approaches and outcomes in federal courts that have applied clearly established Supreme Court precedent to the facts at issue and the absence of any Supreme Court decision concerning this type of claim, we find no basis for concluding . . . that the Appellate Division's decision here constituted an

---

[17/]   The Second Circuit observed that federal habeas courts have used various approaches to address this issue:

> Several lower federal courts that have addressed facts similar to ours have viewed the issue at hand in the same way as the dissent does here: whether the failure to appoint substitute counsel on the motion to withdraw was a violation of the right to counsel.

> Other courts, including ours, however, have applied <u>Strickland</u> v. <u>Washington</u>, <u>Cuyler</u> v. <u>Sullivan</u>, or a similar analysis to determine whether the defendant received ineffective assistance of counsel, and have generally decided the case on the basis of whether the underlying motion had sufficient merit to create an actual conflict of interest or present a "plausible alternative defense strategy."

> And some courts have applied more than one analysis.

<u>Hines</u> v. <u>Miller</u>, 318 F.3d at 163-64 (citations omitted). The Second Circuit noted that, "irrespective of the analysis employed," reviewing courts consistently "have affirmed the denial of a withdrawal motion despite the failure to appoint new counsel." <u>Hines</u> v. <u>Miller</u>, 318 F.3d at 163-64.

unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.

Hines v. Miller, 318 F.3d at 164.[18/]

Here, as in Hines, the First Department rejected Reed's claim that he was denied "the effective assistance of counsel," finding that Justice McLaughlin "'had no reason to believe that the allegedly coercive conduct amounted to anything more than sound advice to accept the favorable plea offer.' Accordingly, there was no conflict of interest and no reason to assign new counsel for the plea withdrawal application." People v. Reed, 60 A.D.3d 475, 475-76, 874 N.Y.S.2d 470, 471 (1st Dep't) (citations omitted), appeal denied, 12 N.Y.3d 919, 884 N.Y.S.2d 700 (2009). As in Hines, the First Department's finding regarding Reed's claim that Justice McLaughlin erred in denying his request to withdraw his guilty plea without appointing new counsel was not an unreasonable application of federal law.

Accordingly, Reed's due process and ineffective assistance of counsel claims should be DENIED.

---

[18/]   Accord, e.g., Rodriguez v. Conway, 07 Civ. 9863, 2009 WL 636503 at *22 (S.D.N.Y. Mar. 13, 2009) (Peck, M.J.), report & rec. adopted, 2009 WL 3094939 (S.D.N.Y. Sept. 28, 2009); Lopez v. Miller, 05 Civ. 7060, 2007 WL 2032839 at *12 (S.D.N.Y. July 17, 2007) (Peck, M.J.); see also, e.g., Benitez v. Green, 02 Civ. 63321, 2005 WL 289753 at *10-11 (S.D.N.Y. Jan. 31, 2005); Martinez v. Costello, 2004 WL 26306 at *7-8; Rivera v. New York, 2003 WL 22234697 at *5; Jenkins v. Artuz, 2003 WL 21499889 at *3; Hutchings v. Herbert, 260 F. Supp. 2d at 581.

**B.** **Reed's Habeas Claim That His Guilty Plea Was Not Knowing or Voluntary is Without Merit**

**1.** **Legal Principles Governing Guilty Pleas**

Constitutional due process requires that a guilty plea be voluntary, knowing, and intelligent.  E.g., Bradshaw v. Stumpf, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005); United States v. Ruiz, 536 U.S. 622, 629, 122 S. Ct. 2450, 2455 (2002); Bousley v. United States, 523 U.S. 614, 618, 118 S. Ct. 1604, 1609 (1998); Mabry v. Johnson, 467 U.S. 504, 508, 104 S. Ct. 2543, 2546-47 (1984); Brady v. United States, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970); Boykin v. Alabama, 395 U.S. 238, 242-43 & n.5, 89 S. Ct. 1709, 1711-12 & n.5 (1969).[19/]

"The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Urena v. People of the State of New York, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (Weinstein, D.J.) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)).  A plea is involuntary where the defendant did not have "'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'"  Marcelin v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *5 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.) (quoting Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805, 107 S. Ct. 248 (1986)).  "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced."  Heron v. People, 98 Civ. 7941, 1999 WL 1125059 at *5 (S.D.N.Y.

---

[19/]    See also, e.g., United States v. Adams, 448 F.3d 492, 497-98 (2d Cir. 2006); Hanson v. Phillips, 442 F.3d 789, 798 (2d Cir. 2006); Wilson v. McGinnis, 413 F.3d 196, 198-99 (2d Cir. 2005); Innes v. Dalsheim, 864 F.2d 974, 977 (2d Cir. 1988), cert. denied, 493 U.S. 809, 110 S. Ct. 50 (1989).

Dec. 8, 1999); see, e.g., United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) ("[T]he Supreme

Court has instructed that, with regard to voluntariness, a guilty plea 'must stand unless induced by

threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled

or unfulfillable promises), or perhaps by promises that are by their nature improper as having no

proper relationship to the prosecutor's business (e.g. bribes).'"); Miller v. Angliker, 848 F.2d 1312,

1320 (2d Cir.) ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and

understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed

'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing

the defendant's will, or the defendant's sheer inability to weigh his options rationally."), cert. denied,

488 U.S. 890, 109 S. Ct. 224 (1988).[20]

      A "'plea of guilty entered by one fully aware of the direct consequences' of the plea

is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by

---

[20]    See also, e.g., White v. Walker, No. 01-CV-0238, 2007 WL 169702 at *11 (N.D.N.Y. Jan. 18, 2007) (quoting Heron); Jones v. Perlman, 05 Civ. 5338, 2006 WL 490055 at *1 (S.D.N.Y. Feb. 28, 2006) (Lynch, D.J.) ("The Supreme Court has held that a guilty plea is intelligent and voluntary when the defendant had the advice of counsel, understood the consequences of the plea, and was not physically or mentally coerced."); Bastien v. William, 03 Civ. 5749, 2004 WL 2978283 at *4 (S.D.N.Y. Dec. 20, 2004); France v. Strack, No. 99-CV-2510, 2001 WL 135744 at *3 (E.D.N.Y. Jan. 30, 2001) ("Pleading guilty to avoid a more severe sentence does not in itself qualify as involuntary because the plea can nonetheless be the 'product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage.'"); Ramirez v. Headley, 98 Civ. 2603, 1998 WL 788782 at *5 (S.D.N.Y. Nov. 10, 1998); Martuzas v. Reynolds, 983 F. Supp. 87, 94 (N.D.N.Y. 1997) (Pooler, D.J.); Phan v. McCoy, No. 94-CV-1596, 1997 WL 570690 at *6 (N.D.N.Y. Aug. 28, 1997) (Pooler, D.J.) ("The mere fact that a defendant pleaded guilty solely to limit his possible penalty does not make that plea involuntary."); United States v. Millan-Colon, 829 F. Supp. 620, 635 (S.D.N.Y. 1993), aff'd, 17 F.3d 14 (2d Cir. 1994).

promises that are by their nature improper.'"  Bousley v. United States, 523 U.S. at 619, 118 S. Ct. at 1609 (ellipses omitted) (quoting Brady v. United States, 397 U.S. at 744, 90 S. Ct. at 1472)).[21/]

"'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'"  Bousley v. United States, 523 U.S. at 621, 118 S. Ct. at 1610 (quoting Mabry v. Johnson, 467 U.S. at 508, 104 S. Ct. at 2547-47); accord, e.g., Bradshaw v. Stumpf, 545 U.S. at 186, 125 S. Ct. at 2407.[22/]

"As the Supreme Court has noted, statements made at plea allocutions carry a strong presumption of verity and constitute a formidable barrier in any subsequent collateral proceeding." Marcelin v. Garvin, 1999 WL 977221 at *7 (quotations omitted, quoting, inter alia, Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977)); accord, e.g., United States v. Grzybek, 283 F. App'x 843, 845 (2d Cir. 2008) ("It is well established that '[a] criminal defendant's self-inculpatory statements made under oath at this plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to

---

[21/]    Accord, e.g., Mabry v. Johnson, 467 U.S. at 509, 104 S. Ct. at 2547; United States v. Doe, 537 F.3d at 211; McMahon v. Hodges, 382 F.3d 284, 290 (2d Cir. 2004); United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988); Gervais v. United States, No. 08-CV-22, 2008 WL 1994944 at *5 (E.D.N.Y. May 5, 2008) (Weinstein, D.J.); Davila v. United States, No. 07-CV-1320, 2008 WL 906691 at *11 (E.D.N.Y. Mar. 31, 2008) (Weinstein, D.J.); King v. Cunningham, 442 F. Supp. 2d 171, 183 (S.D.N.Y. 2006); Smith v. Burge, 03 Civ.8648, 2005 WL 78583 at *13 (S.D.N.Y. Jan. 12, 2005); Marcelin v. Garvin, 1999 WL 977221 at *5; Smylis v. City of New York, 25 F. Supp. 2d 461, 465 (S.D.N.Y. 1998); see also, e.g., Willbright v. Smith, 745 F.2d 779, 780-81 (2d Cir. 1984).

[22/]    See, e.g., Isaza v. United States, 04 Civ. 6096, 2008 WL 1849170 at *3 (S.D.N.Y. Apr. 24, 2008); Groppi v. United States, 05 Civ. 7058, 2006 WL 416393 at *3 (S.D.N.Y. Feb. 17, 2006); Grullon v. United States, 98 Cr. 524, 04 Civ. 5766, 2006 WL 20498 at *1 (S.D.N.Y. Jan. 4, 2006); Marcelin v. Garvin, 1999 WL 977221 at *6.

contradict them.'"); <u>United States</u> v. <u>Laano</u>, 58 F. App'x 859, 861 (2d Cir. 2003) ("A defendant who offers a claim of innocence to substantiate altering his plea must overcome 'the strong presumption of verity that attaches to his admissions of guilt at his plea allocution.'").[23]

## 2. <u>Reed's Guilty Plea Was Voluntary and Intelligent</u>

Reed claims that his guilty plea was not voluntarily because "his attorney coerced him into taking the plea." (Dkt. No. 2: Pet. ¶ 12(a); <u>see</u> pages 6, 8-9 above.) Reed also claims that his guilty plea was not intelligent because "he was under the influence of medication at the time of his plea." (Pet. ¶ 12(a); <u>see</u> pages 6, 8-9 above.) On direct appeal, Reed's appellate counsel argued, without specificity, that Reed was "unduly pressured" by Conway to "accept the People's final offer" and that Reed's medication affected his ability to understand the plea. (Dkt. No. 8: Ex. D: Reed 1st Dep't Br. at 8, 11-14.) Reed's appellate counsel seemingly relied on Reed's statements at the sentencing hearing that Conway had "coerced" him to accept the plea and that he was not in his "right state of mind" when he pled guilty because he "was under medication and [could] prove it." (<u>See</u> page 6 above.)

---

[23] <u>See</u>, <u>e.g.</u>, <u>Adames</u> v. <u>United States</u>, 171 F.3d 728, 732-33 (2d Cir. 1999) (statements at plea allocution "'carry a strong presumption of verity' . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them" (citing cases)); <u>United States</u> v. <u>Paredes-Acevedo</u>, 04 Cr. 363, 2008 WL 2743208 at *2 (S.D.N.Y. June 23, 2008) ("The defendant's statements . . . under oath at his plea allocution carry a strong presumption of verity . . ." (quotations omitted)); <u>United States</u> v. <u>Caesar</u>, 94 Cr. 59, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) ("The Court notes that statements made during a plea allocution carry a strong presumption of verity. Such statements are conclusive absent credible reason justifying departure from their apparent truth." (citations & quotations omitted)); <u>United States</u> v. <u>Napolitano</u>, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("The defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion . . .").

The First Department held:

> The record establishes that the plea was voluntary and that defendant's attacks on his counsel's representation were without merit. . . . Defendant's assertion that medication affected his ability to understand the plea proceedings was unsupported by any evidence, as well as contradicted by the plea allocution record.

People v. Reed, 60 A.D.3d 475, 475-76, 874 N.Y.S.2d 470, 471 (1st Dep't) (citations omitted), appeal denied, 12 N.Y.3d 919, 884 N.Y.S.2d 700 (2009).

As the First Department correctly determined, Reed's plea hearing statements refute his current claim of coercion and involuntariness and "demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty." Martinez v. Costello, 03 Civ. 2763, 2004 WL 26306 at *6 (S.D.N.Y. Jan. 5, 2004).  At his guilty plea allocution, Reed affirmed that he had consulted his lawyer about his case.  (See page 4 above.) Reed acknowledged that he understood the nature of the charges, the promised sentence (including that the promised sentence was shorter than the twenty-five years to life imprisonment he could have faced if convicted at trial) and the rights he was waiving.  (See pages 3-4 above.)  Reed admitted, without hesitation, that he broke into Dasilva's hotel room with the intent to commit a crime therein. (See page 3 above.)  Furthermore, contrary to Reed's later contention at sentencing and on direct appeal, Reed specifically denied being "under the influence of any drug or alcohol."  (See page 5 above.)  Reed also affirmed that if he told Justice McLaughlin "or some other Judge something different in the future . . . , the future statement would not be true . . . ."  (See page 5 above.)

Accordingly, the state court decisions holding that Reed's decision to plead guilty was not coerced and was not made involuntarily or unknowingly, was not contrary to or an unreasonable application of Supreme Court precedent.  See, e.g., Rosenberger v. United States, 133 F. App'x 799,

801 (2d Cir. 2005) (Defendant "has set forth no evidence, other than his self-serving, conclusory allegations, that he was coerced into pleading guilty.  Moreover, the plea allocution indicates that [defendant's] guilty plea . . . was knowing and voluntary."); United States v. Davis, 48 F. App'x 809, 811-12 (2d Cir. 2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with the advice of counsel. . . . Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence."); United States v. Juncal, 245 F.3d 166, 172 (2d Cir. 2001) ("[D]efense counsel's blunt rendering of an honest but negative assessment of appellant's chances at trial, combined with advice to enter the plea, [does not] constitute improper behavior or coercion that would suffice to invalidate a plea."); United States v. Bonilla, 17 F. App'x 11, 13 (2d Cir. 2000) ("This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are 'directly contradicted by his clear statements at allocution' that contained sufficient factual detail about the offense."); Eber-Schmid v. Cuomo, 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *15 (S.D.N.Y. Apr. 22, 2010) (Peck, M.J.) ("Unsubstantiated protestations of coercion are not a basis for withdrawing a knowing and voluntary guilty plea."); Manzullo v. New York, No. 07 CV 744, 2010 WL 1292302 at *6 (E.D.N.Y. Mar. 29, 2010) ("Petitioner indicated that he was not under the influence of any drugs, and the record does not demonstrate any actions or statements by Petitioner that would have alerted the court to his condition.  Petitioner 'cannot now challenge his plea by claiming that he lied

previously under oath [and] . . . , the mere fact that a defendant was under medication at the time

of the plea does not, in and of itself, invalidate the plea,' and therefore, Petitioner's petition for a writ

of habeas corpus on this ground is denied.") (record citation omitted); McCants v. McCoy, No.

00-CV-6444, 2008 WL 4852681 at *5 (W.D.N.Y. Nov. 6, 2008) ("Where a defendant 'has explicitly

stated in his allocution that he fully understands the consequences of his plea and that he has chosen

to plead guilty after a thorough consultation with his attorney, a district court on habeas review may

rely on the defendant's sworn statements and hold him to them.'" (citations omitted)); Hamm v.

Payant, 05 Civ. 8158, 2007 WL 403497 at *5 (S.D.N.Y. Feb. 6, 2007) (involuntary guilty plea

habeas claim denied where petitioner "responded in the negative to the [trial] court's question

whether he was on any drugs or medication," the  trial judge "noted that [petitioner] was 'totally

coherent' on the day of the plea and 'clearly understood everything the Court was stating,'" and "[n]o

evidence of petitioner's medical condition or medications was offered at sentencing . . . or in the

petitioner's direct appeal.").[24]

---

[24]    See also, e.g., United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald
statements that simply contradict what he said at his plea allocution are not sufficient
grounds to withdraw the guilty plea."); United States v. Gonzalez, 970 F.2d 1095, 1100-01
(2d Cir. 1992) (Motion to withdraw guilty plea properly denied where defendant's "claim
was directly contradicted by his clear statements at allocution."); Baker v. Murray, 460 F.
Supp. 2d 425, 433 (W.D.N.Y. 2006) ("Furthermore, petitioner has not provided credible
evidence that would justify overlooking his statements under oath that he was choosing to
plead guilty of his own accord.  In the context of a plea allocution, a defendant's '[s]olemn
declarations in open court carry a strong presumption of verity.'"); Gomez v. Duncan, 02
Civ. 0846, 2004 WL 119360 at *19 (S.D.N.Y. Jan. 27, 2004) (Peck, M.J.) ("This Court may
credit [petitioner's] statements at the plea allocution – that his guilty plea was voluntary and
not the result of any threats or promises – over his later allegations of coercion." (record cites
omitted; citing cases)), aff'd, 317 F. App'x 79 (2d Cir. 2009); Urena v. New York, 160
F. Supp. 2d 606, 611 (S.D.N.Y. 2001) (Petitioner "stated on the record that he knew that he
(continued...)

## CONCLUSION

For the reasons set forth above, Reed's habeas petition should be <u>DENIED</u> in its entirety and a certificate of appealability should not be issued.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.[25]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, 500 Pearl Street, Room 920, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Gardephe (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298,

---

[24]    (...continued)
was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and that he sold over two ounces of cocaine to an undercover officer.  These statements undermine petitioner's claim that his plea was involuntary . . . ." (citing cases)); <u>France</u> v. <u>Strack</u>, No. 99-CV-2510, 2001 WL 135744 at *4 (E.D.N.Y. Jan. 30, 2001) ("Where a petitioner's claims of mistake and coercion find no support in the record and are contradicted by the statements made under oath at the plea proceeding, they do not entitle him to relief.").

[25]    If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from defense counsel.  <u>See</u> <u>Lebron</u> v. <u>Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

32

300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human

Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

<u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:      New York, New York
            February 14, 2011

Respectfully submitted,

Andrew J. Peck
United States Magistrate Judge

Copies to:    Michael Reed
              Lisa Fleischmann, Esq.
              Judge Paul G. Gardephe

H:\OPIN\REED-Michael