UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL REED,

                Petitioner,

- against -

WILLIAM D. BROWN, Superintendant,
Eastern Correctional Facility,

                Respondent.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 6 ☒ 2012
```

**ORDER**

10 Civ. 3072 (PGG) (AJP)

PAUL G. GARDEPHE, U.S.D.J.:

Michael Reed filed a pro se petition for a writ of habeas corpus on February 17,
2010. In an order dated October 4, 2010, this Court referred the petition to Magistrate Judge
Andrew J. Peck for a Report and Recommendation ("R&R"). (Dkt. No. 4) On February 14,
2011, Judge Peck issued a 32-page R&R recommending that the Court deny the petition in its
entirety. (Dkt. No. 9) For the reasons stated below, this Court hereby adopts the R&R of
Magistrate Judge Peck and denies Reed's petition.

## BACKGROUND

On December 27, 2005, Reed entered a Manhattan hotel room through a window.
(R&R at 1 (citing Dkt. No. 7: State Br. at 2)) A hotel guest discovered Reed searching through
his personal property. (R&R at 2 (citing State Br. at 2)) When Reed was later arrested, property
belonging to the hotel guest was found on his person. (R&R at 2 (citing State Br. at 2)) On
December 30, 2005, Reed was indicted for burglary in the second degree in violation of Penal
Law § 140.25. (R&R at 2 (citing State Br. at 2))

On March 17, 2006, Reed filed an omnibus motion to suppress post-arrest
statements and identification evidence. (R&R at 2 (citing State Br. at 2)) A hearing on Reed's

suppression motion was scheduled for September 19, 2006. (R&R at 2 (citing State Br. at 2-3)) Trial was scheduled to commence immediately after the suppression hearing. (Id.)

On September 19, 2006, just before the suppression hearing was to begin, the New York County District Attorney's Office offered Reed a plea bargain under which he would receive a sentence of 16 years to life imprisonment. (R&R at 2 (citing Dkt. No. 8: Ex. A: 9/19/06 Plea Transcript ["P."] 2-3)) After consulting with his attorney, Reed accepted the plea offer. (R&R at 2 (citing P. 4-5))

Before accepting Reed's plea, Justice Edward J. McLaughlin of the Supreme Court of the State of New York, New York County, advised Reed of, inter alia, the nature of the charge against him, the rights he would be giving up if he pled guilty, and the sentence promised as part of the plea agreement. (R&R at 2-5 (citing P. 5-13)) During the guilty plea proceeding, Reed affirmed that he understood the nature of the charge against him and the rights he was giving up:

> THE COURT: Do you understand you just now pled guilty to a felony crime?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: It's charged that on December 27th of last year in Manhattan, in a hotel, the Regency at 215 West 34th Street, at about 6:30 in the evening, you entered that building and more specifically, you entered somebody's room intending to commit a crime in that room.
>
> Do you understand the nature of the charge?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you do that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that's what you're pleading guilty to?

2

THE DEFENDANT: Yes.

THE COURT: Do you understand that by pleading guilty, we're not going to have the hearings and the trial?

The plea of guilty by somebody accused of a crime, a felony[,] has the same legal meaning as if a jury had been assembled and convicted the person of the felony crime.

In other words, because you're pleading guilty, we're not going to have the trial.

You are not going to be given the option – of course, . . . there would be no obligation – you are not going to be given the option of testifying.

Your lawyer's not going to have the opportunity to cross-exam[ine] anyone testifying against you.

And the People are not going to have to prove the case beyond a reasonable doubt.

Do you understand[,] as [] I [have] said now a couple of times[,] because you are pleading guilty, you are not going to have the trial?

THE DEFENDANT: Yes.

(P. 5-7)

Justice McLaughlin discussed the agreed-upon sentence reflected in the plea

agreement and Reed acknowledged that he understood the promised sentence:

THE COURT: As you came into court today, you were charged with a violent felony offense.

If you were convicted of this charge, the sentencing could not have been any less than sixteen to life.

It could have been as high as twenty-five to life.

In a real sense, your choice was not between twelve and sixteen to life, but more realistically between sixteen to life and twenty to twenty-two years to life.

Do you understand that because you're pleading guilty at this juncture, you are going to receive a sentence of sixteen to life?

3

> THE DEFENDANT: Yes, I understand.

(P. at 7)

Reed then confirmed that he had consulted with his lawyer regarding his "rights

and options":

> THE COURT: Have you had a chance to speak to [your lawyer,] Ms.
> Conway? . . . She's spoken to you about what your rights and options are,
> correct?
>
> THE DEFENDANT: No – she spoke with me, yes.

(P. at 11)

With respect to his competence to plead guilty, Reed denied being "under

the influence of any drug or alcohol." Reed also affirmed the truth of all the statements

he had made during his plea allocution:

> THE COURT: Are you under the influence of any drug or alcohol today?
>
> THE DEFENDANT: No.
>
> THE COURT: Is what you told me today true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If you told me or some other [j]udge something different
> in the future from . . . what you're saying today, the future statement
> would not be true because you told me the truth today, am I correct?
>
> THE DEFENDANT: Right.

(P. at 11-12)

Later that day, Reed filed a pro se motion to withdraw his guilty plea (R&R at 5

(citing State Br. at 5; Dkt. No. 8: Reed Motion to Withdraw Guilty Plea)), and also filed a

complaint with the First Department Disciplinary Committee alleging inadequate representation

by his attorney. (R&R at 5-6 (citing Ex. I: Reed Disciplinary Comm. Compl. at 2)) In his

4

complaint to the Disciplinary Committee, Reed alleged that his attorney had filed an omnibus motion on his behalf in April 2006, but did not provide Reed with a copy of the People's opposition until September 2006. (Ex. I: Reed Disciplinary Comm. Compl. at 2) Reed also claimed that his attorney had failed to present a speedy trial issue: "she was not willing to speak up for me in court concerning the . . . [lapse] of time that is chargeable to the People, as I speak I'm at 124 days or more." (Id.) Finally, Reed complained that he had not received a copy of the indictment signed by the foreperson of the grand jury. (Id.) On September 21, 2006, Reed filed a pro se motion for reassignment of counsel, asserting that his attorney's representation was deficient. (R&R at 6 (citing Ex. J: Motion for Reassignment of Counsel & 9/21/06 Reed Aff. ¶¶ 6(A)-(D)))

On October 2, 2006, Reed appeared for sentencing before Justice McLaughlin. (R&R at 6 (citing Dkt. No. 8: Ex. C: Sentencing Transcript ["S."])) Justice McLaughlin first addressed Reed's motion to withdraw his guilty plea. (R&R at 6 (citing S. 2-3)) Justice McLaughlin pointed out that Reed's motion contained no factual allegations. (R&R at 6 (quoting S. 3)) Reed argued, however, that his attorney had "coerced" him to accept the plea and that he was not in his "right state of mind" when he pled guilty because he "was under medication and [could] prove it." (R&R at 6 (quoting S. 4-5, 9-11, 14-15))

Justice McLaughlin concluded that Reed was not impaired when he pled guilty and had not been coerced into pleading guilty:

> THE COURT:  . . . . I am at a loss as to why I should allow you to withdraw the plea. You told me you were guilty. You told me that if you told me something different in the future [than what] you said to me person-to-person on September 18, about your involvement in this[,] that the future statement wouldn't be true because you told me the truth . . . on September 18 and I asked you would that be correct and you said yes.

5

THE DEFENDANT: Yes, Your Honor, I did say that, but I was not in my right state of mind, believe me when I tell you.

THE COURT: I don't. I don't. I hope you don't take it too personally. I don't believe a word you are saying frankly.

. . . .

THE COURT: I am telling you you are about to get 16 to life because you are lying to me now. You told me the truth on the 18th.

THE DEFENDANT: I did not. I was under medication and I can prove it.

THE COURT: I asked you that very question.

. . . .

THE DEFENDANT: You forced me to take 16 years and I was under prescription drugs.

THE COURT: You didn't tell me that. I don't believe it. Take him upstairs.

(S. 8-9, 11, 15)

Justice McLaughlin remarked that the plea bargain was extremely favorable to Reed and that his attorney "should have [been] fired" had she not recommended that Reed accept the District Attorney's offer. (R&R at 7 (quoting S. 5-6, 10)) Justice McLaughlin noted that had Reed's attorney not recommended that Reed accept the plea offer, "given the strength of the case, she should be fired. . . . if she didn't say, Mr. Reed, you are facing 25 years to life. This proof is pretty substantial and if you lose there is virtually no chance of your getting less than 25 and a real good chance that you will get at, or close to[,] the maximum [sentence]." (P. at 5) In denying Reed's motion, Justice McLaughlin found that permitting Reed to withdraw his guilty plea would make "a mockery" of the process. (R&R at 7 (quoting S. 10))

6

Justice McLaughlin next addressed the complaint Reed had filed with the First
Department Disciplinary Committee. (R&R at 7) Justice McLaughlin asked Reed what more
his attorney "could have [] done." (R&R at 7 (citing S. 4, 6-8)) Reed responded that his attorney
did not keep him apprised of developments in the case and "could have spoken up more"
regarding a speedy trial issue. (R&R at 7 (citing S. 4, 6-8)) Justice McLaughlin concluded that
Reed was aware of all the pertinent facts prior to entering his guilty plea and noted that – as to
the speedy trial issue – "the only reason we didn't have your trial the day it was sent here for the
hearing and trial was you said I will take the 16[-year sentence]." (R&R at 7 (citing S. 5, 7-8))

Justice McLaughlin then sentenced Reed in accordance with the plea bargain.
(R&R at 7-8) After finding that Reed was a "mandatory persistent felony offender," Justice
McLaughlin sentenced him to 16 years to life imprisonment. (R&R at 8 (citing S. 12-14))

Represented by new counsel, Reed appealed to the First Department claiming,
inter alia, that Justice McLaughlin violated his "constitutional rights to due process and the
effective assistance of counsel" by "not provid[ing] him a reasonable opportunity to advance the
grounds for his plea withdrawal motion with unconflicted counsel." (R&R at 8 (citing Dkt. No.
8: Ex. D: Reed 1st Dep't Br. at 9)) On March 19, 2009, the First Department unanimously
affirmed Reed's conviction, finding that "[a]fter sufficient inquiry, the court properly denied
[Reed's] motion to withdraw his guilty plea." (R&R at 8 (quoting People v. Reed, 60 A.D.3d
475, 475-76, 874 N.Y.S.2d 470, 471 (1st Dep't 2009)))

The First Department found that

> the record establishes that the plea was voluntary, and that defendant's
> attacks on his counsel's representation were without merit. [T]he court
> had no reason to believe that the allegedly coercive conduct amounted to
> anything more than sound advice to accept the favorable plea offer.
> Accordingly, there was no conflict of interest and no reason to assign new

7

> counsel for the plea withdrawal application. Defendant's assertion that medication affected his ability to understand the plea proceedings was unsupported by any evidence, as well as contradicted by the plea allocution record.

(R&R at 8 (citing Reed, 60 A.D.3d at 475-76 (quotation marks and citation omitted)))

On June 15, 2009, the New York Court of Appeals denied leave to appeal. (R&R at 8 (citing People v. Reed, 12 N.Y.3d 919 (2009))

On February 17, 2010, Reed filed a pro se petition for a writ of habeas corpus. The petition alleges that Reed is entitled to relief on the ground that he was "denied his right to Due Process and the effective assistance of counsel when [Justice McLaughlin] denied his request to withdraw his plea and assign new counsel." (R&R at 8 (citing Dkt. No. 2: Pet. ¶ 12(a); Dkt No. 8: Ex. D: Reed 1st Dep't Br. at 8-14)) Reed claims that he was denied a reasonable opportunity to prove that "he was under the influence of medication at the time of his plea" and that "his attorney coerced him into taking the plea." (R&R at 9 (quoting Pet. ¶ 12(a); Reed 1st Dep't Br. at 11-12)) Reed further claims that he was denied effective assistance of counsel on his motion to withdraw his plea. (R&R at 9 (citing Pet. ¶ 12(a); Reed 1st Dep't Br. at 14))

In an October 4, 2010 order, this Court referred the petition to Magistrate Judge Andrew J. Peck for an R&R. (Dkt. No. 4) On February 14, 2011, Judge Peck issued a 32-page R&R recommending that the Court deny the petition in its entirety. (Dkt. No. 9) Reed objects to Judge Peck's findings regarding two issues: (1) that Justice McLaughlin properly denied Reed's

8

request to withdraw his guilty plea without holding an evidentiary hearing or appointing new

counsel (Pet. Obj. at 1, 3-12)[1]; and (2) that Reed's guilty plea was

knowing and voluntary (Pet. Obj. at 2, 12-17).[2]

---

[1] "Pet. Obj." refers to Reed's Objection to Magistrate's Findings of Fact and Conclusions of Law dated March 14, 2011.

[2] Reed submitted letters to the Court dated March 14, 2011 and March 29, 2011 seeking leave to conduct additional discovery and to expand the record. Reed requests the production of medical records in order to establish that he was on medication when he pleaded guilty. (Mar. 14, 2011 Pet. Ltr. at 1) Reed also seeks to expand the record to include a pre-plea memorandum drafted by his lawyer in the underlying case. (Id. at 2)

"'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course,'" Pizzuti v. United States, No. 10 Civ. 199(RJH)(HBP), 2011 WL 3652293, at *7 (S.D.N.Y. Aug. 18, 2011) (quoting Bracy v. Gramley, 520 U.S. 899, 904 (1997)), and may obtain discovery and expansion of the record only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief. . . .'" Tinsley v. Woods, No. 08 CV 1332(VB), 2011 WL 4472468, at *4 (S.D.N.Y. Sept. 28, 2011) (quoting Bracy, 520 U.S. at 908-09); see also Green v. Ercole, No. 08-CV-04387(ARR), 2009 WL 5178437, at *3 n.1 (E.D.N.Y. Dec. 31, 2009) ("[a] habeas petitioner is entitled to invoke the process of discovery in a federal habeas proceeding only upon a showing of good cause"). A habeas petitioner "bears a heavy burden in establishing a right to discovery." Pizzuti, 2011 WL 3652293, at *7 (quoting Renis v. Thomas, No. 02 Civ. 9256(DAB)(RLE), 2003 WL 22358799, at *2 (S.D.N.Y. Oct. 16, 2003)).

Here, Reed's claim that he was "on medication" at the time of the plea, does not demonstrate that his plea was involuntary. Justice McLaughlin found that Reed was not impaired in any way when he entered his plea. (R&R at 7 (citing S. 8-9, 11, 15) On appeal, the First Department agreed that Reed's claim that medication affected his ability to understand the plea proceedings "was unsupported by any evidence . . . [and was] contradicted by the plea allocution record." (R&R at 28 (citing Reed, 60 A.D.3d at 475-76, 874 N.Y.S.2d at 471)) Reed's plea colloquy, as described in the R&R, was sufficient to establish the plea's voluntary nature. See Roesch v. Fisher, No. 02-CV-6041(JG), 2003 WL 1623082, at *3-*4 (E.D.N.Y. Mar. 7, 2003) (holding that psychiatric medication did not render plea involuntary where "[b]ased on [the plea] colloquy, and on the physical observations [the judge] made during the proceeding, the state court found that [petitioner's] guilty plea was knowing and voluntary"), aff'd, 110 F. App'x 202 (2d Cir. 2004). Because Reed has not shown that discovery or expansion of the record will permit him to "demonstrate that he is entitled to relief," his request for discovery and expansion of the record is denied.

9

## I.      STANDARD OF REVIEW

In evaluating a Magistrate Judge's R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the Magistrate Judge's recommendations, "[the district court judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Razo v. Astrue, No. 04 Civ. 1348(PAC)(DF), 2008 WL 2971670, at *3 (S.D.N.Y. July 31, 2008) (citing Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991)). However, "the phrase de novo determination in section 636(b)(1), as opposed to de novo hearing, was selected by Congress 'to permit whatever reliance a district judge, in the exercise of sound judicial discretion, cho[oses] to place on a magistrate's proposed findings and recommendations.'" Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989) (quoting United States v. Raddatz, 447 U.S. 667, 676 (1980) (emphasis in original)). A federal court "may grant a writ of habeas corpus only if the state court's adjudication 'was contrary to, or involved an unreasonable application of, clearly established Federal law. . . ." Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(d)).

## II.      DENIAL OF MOTION TO WITHDRAW GUILTY PLEA

First, Reed argues that Judge Peck erred in concluding that Justice McLaughlin's decision to deny Reed's motion to withdraw his guilty plea – without holding an evidentiary hearing – did not constitute an unreasonable application of clearly established Federal law. (Pet. Obj. at 1, 3) As Judge Peck pointed out, Hines v. Miller, 318 F.3d 157 (2d Cir. 2003), cert. denied, 538 U.S. 1040 (2003), presents substantially similar claims to those asserted by Reed. (R&R at 19-21) In rejecting those claims, the Second Circuit held that a state court's

10

failure to hold an evidentiary hearing on a motion to withdraw a plea does not offend a deeply rooted or "fundamental" principle of justice. Thus, under AEDPA's deferential standard and the Supreme Court's decision in Medina [v. California, 505 U.S. 437 (1992)], the Appellate Division's conclusion that the state court had conducted a "thorough inquiry, . . . [and] properly denied defendant's motion to withdraw his guilty plea [where] [t]he record establishes that defendant made a voluntary plea and fails to substantiate his claims of coercion . . .," was not an unreasonable application of clearly established Federal law.

(R&R at 20 (quoting Hines, 318 F.3d at 162 (citations omitted))) After Hines, it is now settled

law in this Circuit that "the failure to hold an evidentiary hearing on a motion to withdraw a plea

. . . does not offend a deeply rooted or fundamental principle of justice." Brown v. Laclaire, No.

07 Civ. 5906(KMW), 2010 WL 1221878, at *10 (S.D.N.Y. Mar. 29, 2010) (citing Hines, 318

F.3d at 162). Accordingly, this Court agrees with Judge Peck's conclusion that Justice

McLaughlin's denial of Reed's motion to withdraw his guilty plea without holding an

evidentiary hearing did not constitute an unreasonable application of clearly established Federal

law.

Reed likewise objects to Judge Peck's determination that Justice McLaughlin's

refusal to appoint new counsel for Reed did not constitute an unreasonable application of clearly

established Federal law. (Pet. Obj. at 1, 3-12) As Judge Peck noted, the Second Circuit also

addressed this issue in Hines. (R&R at 22-23) The Second Circuit noted that the "[Supreme]

Court has never specifically addressed a claim . . . that [a habeas] petitioner was denied his right

to counsel because he was effectively unrepresented on his motion to withdraw his plea. . . ."

(R&R at 22 (quoting Hines, 318 F.3d at 163 (citations omitted))) Due to "the absence of any

Supreme Court decision concerning this type of claim," the Second Circuit found that there was

"no basis for concluding . . . that the [state court's] decision . . . constituted an unreasonable

application of clearly established Federal law as determined by the Supreme Court of the United

11

States." (R&R at 22-23 (quoting Hines, 318 F.3d at 164)) Accordingly, this Court agrees with Judge Peck's conclusion that Justice McLaughlin's failure to appoint new counsel to assist Reed with his plea withdrawal motion was not contrary to, or an unreasonable application of, clearly established Federal law.

## III.   KNOWING AND VOLUNTARY NATURE OF GUILTY PLEA

Reed also objects to Judge Peck's determination that his guilty plea was knowing and voluntary. (Pet. Obj. at 2, 12-17) Reed contends that his plea was the product of coercion from his attorney and that he was under the influence of medication at the time of his plea. (Pet. Obj. at 12-13, 17; R&R at 27) However, Justice McLaughlin asked Reed whether he had a chance to speak to his attorney concerning his "rights and options" and whether he was pleading guilty because he was "in fact, guilty of this charge," to which Reed answered in the affirmative. (P. at 11-12) The fact that Reed's lawyer urged him to accept a highly favorable plea offer does not establish coercion.

"Unsubstantiated protestations of coercion are not a basis for withdrawing a knowing and voluntary guilty plea." Eber-Schmid v. Cuomo, No. 09 Civ. 8036(BSJ)(AJP), 2010 WL 1640905, at *15 (S.D.N.Y. Apr. 22, 2010) (citations omitted). As Judge Peck noted, the First Department determined that "[Reed's] plea hearing statements refute his current claim of coercion and involuntariness and 'demonstrate that the plea was knowing in that it was entered with full knowledge of the charge and the consequences of pleading guilty.'" (R&R at 28 (quoting Martinez v. Costello, No. 03 Civ. 2763(GEG), 2004 WL 26306, at *6 (S.D.N.Y. Jan 5, 2004))); see Urena v. New York, 160 F. Supp. 2d 606, 611 (S.D.N.Y. 2001) (petitioner's statements during plea colloquy that "he knew that he was giving up the right to trial and the safeguards that accompany that right, that he was not threatened or forced to plead guilty, and

12

that he [committed the crime charged] . . . undermine[d] petitioner's claim that his plea was involuntary").

Justice McLaughlin likewise inquired into whether Reed was "under the influence of any drug or alcohol" during the plea proceedings, to which Reed responded that he was not. (P. 11-12) At sentencing, Justice McLaughlin stated that he did not believe that Reed was under the influence of medication when he entered his guilty plea. (S. at 9, 15)

Reed's claims that his plea was not knowing and voluntary because he was under the influence of medication are "dispelled by [his] own statements at the plea hearing. The Supreme Court has held that statements made by a defendant at a plea hearing constitute a 'formidable barrier' which cannot easily be attacked in subsequent collateral hearings because '[s]olemn declaration[s] in open court carry a strong presumption of verity." Roman v. Cunningham, No. 04 CV 1093(NG), 2005 WL 1796122, at *4 (E.D.N.Y. July 27, 2005) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)). Reed stated during the plea proceeding that he was not under the influence of any drug, and the record contains no evidence that he was impaired at the time of his plea.

This Court agrees with Judge Peck's conclusion that the state court decisions holding that Reed's guilty plea was not coerced and was made voluntarily and knowingly were not contrary to, or an unreasonable application of, clearly established Federal law.

13

## **CONCLUSION**

The Court adopts the findings and conclusions set forth in Judge Peck's Report

and Recommendation in their entirety. The Petition for a Writ of Habeas Corpus (Dkt. No. 2) is

DENIED. The Clerk of the Court is directed to close this case. Any pending motions should be

terminated as moot.

Dated: New York, New York
       January 6, 2012

SO ORDERED.

Paul G. Gardephe
United States District Judge

14